No. 25-11055

# In the
# United States Court of Appeals
# for the Fifth Circuit

WINNIE JACKSON, JARRETT "JAY" JACKSON, CELINA
VASQUEZ, DUANE BRAXTON, NADIA BHULAR, AMJAD
BHULAR, CHERYL MILLS SMITH, AND RICHARD CANADA,
*Plaintiffs-Appellants*,

v.

TARRANT COUNTY, TEXAS, TARRANT COUNTY
COMMISSIONERS COURT, TIM O'HARE, IN HIS OFFICIAL
CAPACITY AS TARRANT COUNTY JUDGE,
*Defendants-Appellees*.

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:25-CV-000587-O

## BRIEF OF APPELLEES
## TARRANT COUNTY, ET AL.

Joseph M. Nixon
Public Interest Legal Foundation
107 S. West Street, Suite 700
Alexandria, Virginia 22314
Tel: (703) 745-5870
COUNSEL FOR DEFENDANTS-APPELLEES

No. 25-11055

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

WINNIE JACKSON, JARRETT "JAY" JACKSON, CELINA
VASQUEZ, DUANE BRAXTON, NADIA BHULAR, AMJAD
BHULAR, CHERYL MILLS SMITH, AND RICHARD CANADA,
*Plaintiffs-Appellants*,

v.

TARRANT COUNTY, TEXAS, TARRANT COUNTY
COMMISSIONERS COURT, TIM O'HARE, IN HIS OFFICIAL
CAPACITY AS TARRANT COUNTY JUDGE,
*Defendants-Appellees*.

---

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:25-CV-000587-O

---

### CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

i

| Appellants | Counsel for Appellants |
|---|---|
| Winnie Jackson<br>Jarrett "Jay" Jackson<br>Celina Vasquez<br>Duane Braxton<br>Nadia Bhular<br>Amjad Bhular<br>Cheryl Mills-Smith<br>Richard Canada | Chad W. Dunn<br>George (Tex) Quesada<br>Sean J. McCaffity<br>Jesse Gaines<br>Mark P. Gaber<br>Danielle Lang |
| Appellees | Counsel for Appellees |
| Tarrant County, Texas<br>Tarrant County Commissioners Court<br>Tim O'Hare, in his official capacity as Tarrant County Judge | J. Christian Adams<br>Kaylan Phillips<br>Joseph M. Nixon<br>Jewel M. Lightfoot<br>Steven A. Lund<br>Katherine E. Owens |

 /s/ Joseph M. Nixon
Joseph M. Nixon
Public Interest Legal Foundation
107 S. West Street, Suite 700
Alexandria, Virginia 22314
Tel: (703) 745-5870
COUNSEL FOR DEFENDANTS-APPELLEES

## STATEMENT REGARDING ORAL ARGUMENT

The Court scheduled oral argument for October 27, 2025, at 10:00 am.

# TABLE OF CONTENTS

Certificate of Interested Persons ....................................... i

Statement Regarding Oral Argument ............................... iii

Table of Authorities ........................................................ vi

Issues Presented ............................................................... 2

Statement of the Case ..................................................... 2

Factual Background ......................................................... 4

Summary of the Argument .............................................. 7

    I.  Appellants Have No Likelihood of Success on the Merits. 7

    II. Appellants' First Amendment Claim Does Not Exist. ....... 9

Standard of Review ......................................................... 10

    Denial of Preliminary Injunction ......................... 10

    Dismissing the Non-Justiciable First Amendment Claim ... 11

Argument ........................................................................ 11

    I.  Appellants Fail to Plead or Present Facts Sufficient to Support a Cognizable Claim ................................. 11

        Count 1 – Redisticting Voters to a Precinct with an Election in 2028 Instead of 2026 is not Disenfranchisement ........................................ 12

        Count 2 Part One – The District Court Correctly Held Appellants' Evidence Failed to Support a Claim Map 7 Intentionally Targets Voters Based on Race ................. 16

Count 2 Part Two – The District Court Correctly Held Appellants' First Amendment Claim is a Political Question ........................................................................... 25

Count 3 and 4–The District Court Correctly Held Appellants' Fourteenth and Fifteenth Amendment Claims Lack Evidentiary Support. ................................. 26

II. The District Court Lacks Subject-Matter Jurisdiction Over Partisan Gerrymandering ............................................. 31

Conclusion ..................................................................................... 33

Certificate of Service ..................................................................... 36

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements ............. 37

TABLE OF AUTHORITIES

Cases                                                                  Page(s)

*Am. Citizens v. Perry*,
     548 U.S. 399 (2006) .............................................................. 23

*Alexander v. S.C. State Conf. of the NAACP*,
     602 U.S. 1 (2024) ...................................... 8, 19, 25, 28, 32, 33

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) .............................................................. 11

*Avery v. Midland Cnty.*,
     390 U.S. 474 (1968) .............................................................. 15

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) .............................................................. 11

*Brnovich v. Democratic National Committee*,
     594 U.S. 647 (2021) .............................. 8, 20, 21, 22, 23, 24, 25

*CAE Integrated, L.L.C. v. Moov Techs., Inc.*,
     44 F.4th 257 (5th Cir. 2022) .............................................. 7, 10

*Carr v. Brazoria Cnty.*,
     341 F. Supp 155 (S.D. Tex. 1972) ...................................... 5, 13

*Carr v. Brazoria Cnty.*,
     468 F.2d 950 (5th Cir. 1972) ............................................ 13, 20

*Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*,
     710 F.3d 579 (5th Cir. 2013) ........................................... 10, 15

*Dollinger v. Jefferson Cnty. Comm'rs Ct.*,
     335 F. Supp 340 (E.D. Tex. 1971) ........................................ 14

*Donatelli v. Mitchell*,
     2 F.3d 508 (3d Cir. 1993)..................................................... 23

*Harris Cnty. Tex. v. MERSCORP Inc.*,
     791 F.3d 545 (5th Cir. 2015) ................................................ 11

*Heckman v. Williamson Cnty.*,
   369 S.W. 3d 137 (Tex. 2012)................................................. 13

*Hunt v. Cromartie*,
   526 U.S. 541 (1999) ...................................................... 9, 32

*In re Ondova Ltd. Co. v. Sherman*,
   914 F.3d 990 (5th Cir. 2019) ................................................ 11

*Johnson v. De Grandy*,
   512 U.S. 997 (1994) ......................................................... 18

*LULAC v. Abbott*,
   601 F. Supp. 3d 147 (2022) ..............................................27-29

*Mader v. Crowell*,
   498 F. Supp. 226 (M.D. Tenn. 1980) ...................................... 12

*Miller v. Johnson*,
   515 U.S. 916 (1995) ........................................................ 3, 27

*Miss. Power & Light Co. v. United Gas Pipeline*,
   760 F.2d 618 (5th Cir. 1985) ............................................... 10

*Nichols v. Alcatel USA, Inc.*,
   532 F.3d 364 (5th Cir. 2008) ............................................... 10

*Pate v. El Paso Cnty.*,
   337 F. Supp 95 (5th Cir. 1970)................................... 5, 13, 20

*Pereira v. Town of N. Hempstead*,
   682 F. Supp. 3d 234 (E.D.N.Y. 2023).............................. 12-13

*Perez v. Abbott*,
   253 F. Supp. 3d 864 (W.D. Tex. 2017) ................................. 28

*Petteway v. Galveston County*,
   11 F.4th 596 (5th Cir. 2024)........................................... 24, 33

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) .............................................................. 4

*Reno v. Bossier Par. Sch. Bd.*,
520 U.S. 471 (1997) ...................................................... 27

*Republican Party of Oregon v. Keisling*,
959 F.2d 144 (9th Cir. 1992) .................................... 12, 13, 22

*Rucho v. Common Cause*,
588 U.S. 684 (2019) ............................................. 9, 25, 26, 32

*Shaw v. Reno*,
509 U.S. 630 (1993) ...................................................... 28

*Shelby County v. Holder*,
540 U.S. 529 (2013) ....................................................17-18

*Tesfamichael v. Gonzales*,
411 F.3d 169 (5th Cir. 2005) .................................... 10

*Thornburg v. Gingles*,
478 U.S. 30 (1986) .................................................. 7, 21

*Vieth v. Juberlirer*,
541 U.S. 267 (2004) .................................................. 32

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ............................................... 28, 31

## Rule

Fed. R. Civ. P. 12(b)(6)............................................ 11

## Other Authorities

Tim O'Hare, *County Judge Tim O'Hare Redistricting Interview,*
YouTube (Oct. 20, 2025),
www.youtube.com/watch?v=alTLFP_pMvY...................................... 16

No. 25-11055

# In the
# United States Court of
# Appeals for the Fifth Circuit

WINNIE JACKSON, JARRETT "JAY" JACKSON, CELINA
VASQUEZ, DUANE BRAXTON, NADIA BHULAR,
AMJAD BHULAR, CHERYL MILLS SMITH, AND
RICHARD CANADA,

*Plaintiffs-Appellants*,

v.

TARRANT COUNTY, TEXAS, TARRANT COUNTY
COMMISSIONERS COURT, TIM O'HARE, IN HIS
OFFICIAL CAPACITY AS TARRANT COUNTY JUDGE,

*Defendants-Appellees*.

On Appeal from the United States District Court for
the Northern District of Texas, Fort Worth Division
Civil Action No. 4:25-CV-00587-O

## BRIEF OF APPELLEES
## TARRANT COUNTY, ET AL.

The district court properly denied Appellants' motion for a
preliminary injunction because Appellants requested extraordinary
relief without factual or legal justification. The district court's decision
should be upheld.

## Issues Presented

1.    Did the district court abuse its discretion in denying the Appellants' motion for preliminary injunction when it found there was no likelihood of success on the merits of their claims?

2.    Did the district court err when it dismissed the Appellants' First Amendment claim based upon the partisan redistricting of Tarrant County's Commissioners Court precincts?

## Statement of the Case

All four of Appellants' claims are based on the faulty foundation that voters have a right to not be redistricted from one county commissioner's precinct to another. Appellants have no redressable injury and no judicial remedy without that claimed right. Based on a "dearth of evidence" the district court correctly denied the request for preliminary injunction. ROA.673.

Tarrant County adopted a new Commissioners Court precinct map ("Map 7") after a months' long public process that included demographer input, community outreach, and countywide public meetings held in every precinct. Tarrant County's process was lawful, deliberative, and consistent with both State and federal law. The resulting Map 7 complied

with traditional redistricting principles of equal population, compactness, continuity, and respect for communities of interest. *See Miller v. Johnson*, 515 U.S. 916 (1995).

Appellants' claims are based on the faulty legal theory that voters have the right to not be redistricted. Appellants allege that the adoption of Map 7 constitutes racially motivated vote denial, unconstitutional disenfranchisement, and unlawful partisan gerrymandering. They present no established legal authority or credible evidence of a protected right being violated, an unlawful motive, a right to recover, or proof of irreparable harm. The district court properly found, based on the allegations and evidence presented, there was insufficient evidence to support a preliminary injunction or that the claimed right was not justiciable.

Without providing relevant evidence, Appellants ask this Court to find the district court abused its discretion, discard a lawfully adopted map, interrupt established election procedures, and impose judicial oversight on a local redistricting decision. Appellants' sought injunction would undermine lawful county legislative authority, substantially disrupt preparations for the 2026 election, confuse voters, and sow

uncertainty in staggered elections statewide.

Judicial interference with elections, especially close to a voting cycle, should be rare and justified only by clear and compelling evidence. *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (per curiam). Appellants have not met that standard. *Allen v. Milligan*, 599 U.S. 1 (2022) (Kavanaugh, J., concurring) (establishing a four-element test for overcoming *Purcell*). The district court's decision denying Appellants' request for a preliminary injunction should be upheld.

## FACTUAL BACKGROUND

Tarrant County is governed by a Commissioners Court that includes four commissioners elected from single-member precincts and a county judge elected at-large. Tex. Const. Art. V, § 18(b). Commissioners serve staggered four-year terms. *Id.* Under this system, two precincts hold commissioner elections during each general election cycle; even-numbered precincts vote in presidential election years (e.g., 2028), while odd-numbered precincts vote in midterm years (e.g., 2026). ROA.523. As a result, any redistricting will necessarily reassign some voters from a precinct voting in a mid-term to a presidential election date.[1]

---

[1] This consequence is common, legally permissible, and inherent to

In 2021, following the 2020 Census, the Commissioners Court reviewed its 2011 redistricting map and decided to readopt the 2011 map without changes. ROA.21. That map remained in effect until 2025. ROA.24.

In April 2025, Tarrant County voted to consider redistricting the Commissioners' precincts. ROA.434. Five maps were initially proposed, and each proposed map, as well as the Benchmark Map, were available online. *Id.* Tarrant County also posted information about the redistricting process on its website, social media sites, and local newspapers. *Id.* The County's website also allowed the public to submit their own maps, comment on proposed maps, and apply overlays of school districts, facilities hubs, roads, zip codes, and other data with each proposed map and the Benchmark Map. *Id.* Each Commissioner's precinct also held a public meeting where residents could review and comment on proposed maps.[2] Recordings of these meetings were posted

---

jurisdictions with staggard elections. *See Carr*, 341 F. Supp. at 159-60; *see also Pate*, 337 F. Supp at 98-99.

[2] Precinct 4's public meeting was held on April 13, 2025, Precinct 1's public meeting was held on April 14, 2025, Precinct 2's public meeting was held on April 17, 2025, and Precinct 3's public meeting was held on April 21, 2025. ROA.434.

on Tarrant County's official website. Following the public input process, two new maps incorporating voter feedback (Map 6 and Map 7) were made available on Tarrant County's official website.

On June 3, 2025, the Tarrant County Commissioners Court voted to adopt Map 7. All proposed maps and recordings of these meetings are available at https://www.tarrantcountytx.gov/redistricting.

The County did not make any voting time, place, or manner changes.

Appellants, voters who objected to the redistricting, filed suit, and asserted that Map 7 violates: (1) section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301; (2) the First and Fourteenth Amendments by moving voters from one district to another on the basis of political affiliation; and (3) the Fourteenth and Fifteenth Amendments through intentional racial vote dilution. *See* ROA.87-93.

The district court, upon considering the Appellants' motion for preliminary injunction and supporting evidence, determined there was no likelihood of success on the merits and denied the preliminary injunction. *See* ROA.652. The court also granted Tarrant County's motion to dismiss the First Amendment portion of Count 2. *See*

ROA.652.

<h2 style="text-align:center">SUMMARY OF THE ARGUMENT</h2>

### I.    Appellants Have No Likelihood of Success on the Merits.

The district court did not abuse its discretion when denying the Appellants' motion for preliminary injunction. Courts of appeal review a district court's preliminary injunction denial for abuse of discretion—an exceedingly deferential standard under which reversal is appropriate only if the district court relied on clearly erroneous findings of fact or misapplied the law. *CAE Integrated, L.L.C. v. Moov Techs., Inc.,* 44 F.4th 257, 261 (5th Cir. 2022) ("[a] preliminary injunction is 'an extraordinary remedy which should not be granted unless the party seeking it has clearly carried [its] burden of persuasion.'").

Appellants did not plead a vote dilution case under Section 2(b) utilizing the *Gingles* analysis. *See Gingles v. Thornburg*, 478 U.S. 30, 46 (1986). Instead, Appellants argued that moving some voters from an even-numbered commissioner precinct into an odd-numbered precinct, and vice versa, is temporary voter disenfranchisement. ROA.15. The Appellants' novel theory is that the County's redistricting caused a form of "temporary disenfranchisement" that disparately impacts Black and

7

Hispanic voters by affecting the "time, place or manner of voting."[3] ROA.657. This is a misapplication of *Brnovich*. *See Brnovich v. Democratic National Committee*, 594 U.S. 647 (2021).

In weighing Appellants' evidence under the totality of the circumstances, the district court correctly held that "the voting franchise remains 'equally open' to Appellants, and thus, Appellants fail[ed] to demonstrate a likelihood of success on the merits of their §2 claim." *See* ROA.665.

The district court held the Appellants failed to disentangle race and politics and failed to show that the commissioners court was "motivated by race as opposed to partisanship." *See* ROA.667-68; *see also Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 38 (2024) ("when race and partisan preferences are highly correlated," the plaintiff "must disentangle race and politics if it wishes to prove that the legislature was motivated by race as opposed to partisanship.").

The district court held that Appellants' failure to disentangle race

---

[3] Appellants admit, via Dr. Cortina's report, that Precinct 2 is neither a majority-minority district nor a coalition district in which any combination of multiple minorities aggregate to make a majority district. ROA.183, Table 5. Black and Hispanic population do not add up to greater than 50%.

from politics defeated their Section 2 claims because political redistricting is permissible even "if it happens that most loyal Democrats happen to be black Democrats and even if the State were *conscious* of that fact." *Hunt v. Cromartie*, 526 U.S. 541, 551 (1999); *see* ROA.673.

Regarding Appellants' Fourteenth and Fifteenth Amendment intentional disenfranchisement claims, the district court correctly held there was not a likelihood of success on the merits "given the dearth of evidence on this record" to support a finding in Appellants' favor. *See* ROA.673.

## II.    Appellants' First Amendment Claim Does Not Exist.

In considering the First Amendment claim, the district court correctly held Appellants' "hybrid" theory of "disenfranchisement" and "viewpoint discrimination" is a non-justiciable political question. ROA.666. (relying on *Rucho v. Common Cause*, 588 U.S. 684 (2019)).

As the district court's factual findings were not clearly erroneous and the district court correctly applied the law to these facts, this Court should affirm the district court's dismissal with prejudice.

## STANDARD OF REVIEW

### Denial of Preliminary Injunction

This Court reviews the denial of a preliminary injunction only for abuse of discretion. *CAE Integrated*, 44 F. 4th at 261. The decision to grant injunctive relief is considered an extraordinary remedy. *Miss. Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985). Reversal is appropriate only if the district court relied on clearly erroneous findings of fact or misapplied the law. *Id.* To obtain a preliminary injunction, the moving party bears the burden of showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the preliminary injunction will not disserve the public interest. *See Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The party seeking injunctive relief bears a heavy burden of proving all elements of the preliminary injunction. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *see also Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005) (the likelihood of success on the merits is the most important

factor).[4]

## Dismissing the Non-Justiciable First Amendment Claim

Appellants must plead "sufficient facts to state a claim for relief that is plausible on its face." *In re Ondova Ltd. Co. v. Sherman*, 914 F.3d 990, 992 (5th Cir. 2019); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Appellate courts give *de novo* review to an order dismissing a suit pursuant to Rule 12(b)(6). *See Harris Cnty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015). Under *de novo* review, Appellate courts are not bound to accept as true a legal conclusion couched as a factual allegation. *In re Ondova Ltd. Co.*, 914 F.3d at 993. Under Rule 12(b)(6) an action that fails "to state a claim upon which relief can be granted" must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I. Appellants Fail to Plead or Present Facts Sufficient to Support a Cognizable Claim.

Appellants assert factually and legally unmoored causes of action that: (1) Map 7 disenfranchised voters by moving them to a precinct with

---

[4] Finding there was not a likelihood of success on the merits of any of Appellants' claims, the district court did not reach the other factors necessary to prevail on a motion for preliminary injunction. ROA.674.

a commissioner's election in 2028; (2) Map 7 was intentionally racially discriminatory; and (3) the redistricting violated the First Amendment. *See* ECF No. 55, at 11-13. These claims are merely an attempt to substitute politics with race, recast a politically drawn map with an invented right to vote in a specific year, and to delay the political consequences of lawful redistricting.

### Count 1 – Redistricting Voters to a Precinct with an Election in 2028 Instead of 2026 is not Disenfranchisement.

Appellants' claim is based upon the false premise that a voter can be disenfranchised by being moved to a precinct that has a different county commissioner election schedule. Appellants, some of whom were moved from a 2026 to a 2028 precinct, can still vote for every precinct, district, State, and federal election for which they are eligible on the date of that election.

Appellants assert the County's redistricting has resulted in them being represented by a new Commissioner whom they did not elect, while losing the right to vote in an election cycle. *See* ECF No. 55, at 7. This is an unavoidable consequence of redistricting a jurisdiction with a staggered election cycle. *See, e.g., Republican Party of Oregon v. Keisling*, 959 F.2d 144 (9th Cir. 1992); *Mader v. Crowell*, 498 F. Supp.

226, 231 (M.D. Tenn. 1980); *see also Pereira v. Town of N. Hempstead*, 682 F. Supp. 3d 234, 244 (E.D.N.Y. 2023) (collecting cases that approve of the inevitable impacts—in addition to voting delays—of redistricting on staggered election terms).

The use of a staggered schedule is a rational component of election administration and is not a facially valid constitutional injury. *Heckman v. Williamson Cnty.*, 369 S.W. 3d 137, 153 (Tex. 2012). Appellants' cause of action closely tracks the failed allegations in *Pate v. El Paso Cnty.*, in which a three-judge panel ruled that "[a]s long as standards and conditions regarding voting are reasonable and non-discriminatory they are permissible." 337 F. Supp. 95, 99 (W.D. Tex. 1970), aff'd sub nom. 400 U.S. 806 (1970); *see also Carr v. Brazoria Cnty.*, 341 F. Supp. 155 (S.D. Tex. 1972), aff'd sub nom. *Carr v. Brazoria Cnty.*, 468 F.2d 950 (5th Cir. 1972) (a redistricting that resulted in voters suffering a two-year postponement voting is constitutional).

As the district court found, Appellants' cause of action depends on the precinct being redrawn for the purpose of racial discrimination. *See* ROA.658 (citing *Keisling*, 959 F.2d at 145-46) ("temporary disenfranchisement would be unconstitutional—or at least subject to

heightened scrutiny—if it was the result of invidious discrimination.").

Appellants have failed to plead or present facts supporting racial intent. Rather than allege an injury, Appellants simply identify individual members of multiple minority groups who have been moved from a precinct with an election in 2026 to one with an election in 2028 and claim that, if Tarrant County redistricted back and forth before every election, these individual voters could never vote again. ROA.602. Those are not the facts of this case. Appellants did not lose their right to vote in an election cycle and the lines have not been repeatedly moved. Like every other voter in Precinct 2, Appellants do not have a commissioner's election in 2026. Section 2 is not implicated by the adoption of Map 7.

All Tarrant County voters are subject to the ordinary burdens associated with voting and the facts do not support the conclusion that precinct lines were drawn to prevent individual citizens from voting. "[I]t does not follow as a matter of right that the voters transferred from one precinct to another precinct are entitled to vote at the next regular election unless they reside within the commissioners precincts in which such elections are being held." *Dollinger v. Jefferson Cnty. Comm'rs Ct.*,

335 F. Supp. 340, 344 (E.D. Tex. 1971). Despite claiming that "[a]fter 2026, Plaintiffs will have permanently lost the opportunity to participate in the selection of their representative for that election cycle," (ECF No. 55, at 25) the Texas' Constitution does not afford a right to elect Commissioners on a specific date.[5]

Appellants have failed to demonstrate they are likely to succeed on the merits of their claims. This is a prerequisite for a preliminary injunction. *See Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). Because Appellants did not meet a necessary component of a preliminary injunction, the district court did not abuse its discretion in denying a preliminary injunction on Count 1.

---

[5] In contrast, the Texas Constitution was amended to mandate Senate elections after each redistricting following the Supreme Court's ruling that the one-person, one-vote requirement applied to Texas county commissioner precincts. *See* SJR 4, 53rd Reg. Session (https://lrl.texas.gov/legis/billsearch/BillDetails.cfm?legSession=53-0&billTypeDetail=SJR&billnumberDetail=4&submitbutton=Search); *see generally Avery v. Midland Cnty.*, 390 U.S. 474 (1968). However, the legislature did not apply a similar amendment for county commissioners, indicating a right to an election schedule was not a concern for these elections.

**Count 2 Part One—The District Court Correctly Held Appellants' Evidence Failed to Support a Claim Map 7 Intentionally Targets Voters Based on Race.**

To support this claim, Appellants allege that "Map 7 was drawn to intentionally discriminate against both Black and Latino voters by vastly and disproportionately disenfranchising them from voting in 2026 election for commissioner." ROA.93.

Without direct evidence, Appellants attempt to breathe life into an out of context and deceptively cut quote by Tarrant County Judge O'Hare. The quote was in response to an NBC 5 (Dallas) interviewer's racially charged question, as the district court characterized it, about Map 7's impact on Black voters:

> Q: You heard the opposition for Democrat leadership. When you look at the option that was chosen, those northern two districts are pretty much the same as the previous map but those South two districts changed drastically. They say those are where most of the minority voters are in Tarrant County and that this action is racist. It dilutes the voting power of minority voters, and ultimately, that it is an attack on those voting freedoms. What do you say in a response to that?

Judge O'Hare responded by saying:

> A: Democrats do not have a monopoly on people of color like they think they do. They are moving towards the Republican party in droves. You've seen all these flips in south Texas from Democrat to Republican on the backs of Hispanic voters. And President Trump made a lot of inroads with Black voters this

past election and the policies of Democrats continue to fail Black people over and over and over, but many of them keep voting them in. It's time for people of all races to understand the Democrats are a lost party, they are a radical party, it's time for them to get on board with us and we'll welcome them with open arms.

Tim O'Hare, *County Judge Tim O'Hare Redistricting Interview,* YouTube (Oct. 20, 2025), www.youtube.com/watch?v=alTLFP_pMvY.

As the district court correctly said, "[t]his statement is not the smoking gun Plaintiffs think it its." ROA.673. "His opinion observes the correlation between race and partisan preference, which is consistent with Plaintiffs' own evidence that racial minorities vote cohesively." *Id.* The district court correctly ruled that Judge O'Hare's statement was not close to an admission that Map 7 was drawn with racial intent, but an elected official responding to an interviewer's question regarding Map 7's impact on a racial group and an effort to garner more Republican support. ROA.673.

Appellants further claim that the district court erred by classifying their allegations—that Tarrant County intentionally drew precinct lines to pack minority members to minimize their electoral influence—as being racial gerrymandering. ECF No. 55, at 14.

Appellants claim race-based vote dilution by reducing from two to

one the number of majority-minority precincts. Preventing retrogression of any minority officeholder is a pre-*Shelby County* concern, but no longer. Section 5's preclearance obligations prohibited in covered jurisdictions, but that is no longer the law.[6] *See Shelby County*, 570 U.S. at 540. The district court properly did not impose an incorrect pre-*Shelby County* standard.

Appellants similarly mischaracterize the district court's decision as ruling that "mapmakers are free to act *intentionally* to harm Black voters so long as that wasn't their 'predominate' goal." ECF No. 55, at 34. This is a mischaracterization of the district court's order. The district court acknowledged the analytical distinction between partisan gerrymandering and vote-dilution but found that "Plaintiffs are adamant that *this* claim is *not* premised on a theory of vote dilution, and Plaintiffs do not otherwise explain why *this* claim is analytically distinct

---

[6] Tarrant County is 19.3% Black. *See* ROA.72. This alone forecloses the possibility of proving vote dilution of Tarrant County's Black population because, "as a matter of law no dilution occurs whenever the percentage of single member districts in which minority voters form an effective majority mirrors voters' percentage of the relevant population." *Johnson v. De Grandy*, 512 U.S. 997, 1017 (1994) (an electoral map cannot violate § 2 if the districting plan allows voters to form effective voting majorities in districts roughly proportional to their share of the voting-age population).

from a racial gerrymandering claim." *See* ROA.668 (emphasis in original).

The district court was commenting on Appellants' inability to "articulate their theory of harm without making an allegation of racial gerrymandering" and correctly stated that "at its core, Appellants' Equal Protection claim in Count 2 is a racial gerrymandering claim, and Appellants 'must disentangle race and politics if [they] wish[] to prove that the legislature was motivated by race as opposed to partisanship." *See* ROA.668 (citing *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1 (2024)).

Despite alleging that "both direct and circumstantial evidence demonstrates that Map 7 was adopted, at least in part, to harm Black voters and diminish their political power," (ECF No. 55, at 32), the district court properly observed Appellants' evidence failed to support that claim. ROA.662. Appellants claim that Tarrant County "intentionally subjected a disproportionate number of Black and Latino voters to disenfranchisement in the 2026 election cycle as part of a scheme to minimize their political power." ECF No. 55, at 33. However, as the district court held, slight disparate impacts do not create a federal

cause of action. ROA.664.

Indeed, *Brnovich* bars a claim based solely on a disparate impact. *See Brnovich,* 594 U.S. at 674. *Pate* and *Carr* bar constitutional claims over movement from one staggered district to another. *Pate*, 337 F. Supp. at 95; *Carr*, 468 F. 2d at 950. Despite *Brnovich's* application to time, place, and manner restrictions, Appellants advance this ill-fitting theory under Section 2.

Appellants have affirmatively disavowed a vote-dilution claim and a racial gerrymandering claim. Therefore, an issue before this Court is whether Appellants are likely to succeed on the merits of the ill-fitting *Brnovich* claim. *See* ROA.159. The trial court correctly observed that Appellants do not raise a Section 2 vote dilution claim but rather contend that the adoption of Map 7 has denied or abridged their right to vote on account of race because it "has disproportionately disenfranchised Black and Latino voters of their right to vote in the November 2026 election— forcing them to wait six rather than four years to cast a ballot for commissioner." ROA.657. The trial court correctly held the proffered evidence did not support the novel theory. ROA.660-65.

Appellants' Section 2 claims do not allege a denial or abridgement

of voting rights. ROA.553 (admitting that Appellants' First Amended Complaint contains no racial gerrymandering claim). The Supreme Court has rejected a Section 2 claim driven solely by disparate impacts. *Brnovich*, 594 U.S. at 677. In their effects claim under Section 2, Appellants rejected *Gingles* and instead ground their Section 2 claim in *Brnovich*, while conceding that *Brnovich* only applies to time, place, manner voting rules. Appellants also concede that *Gingles* applies to "the dispersal of [a minority group] into districts in which they constitute an ineffective minority of voter or…the concentration of [a minority group] into districts where they constitute an excessive majority." ROA.159 (citing *Brnovich*, 594 U.S. at 667, 674 and *Thornburg v. Gingles*, 478 U.S. 30, 46 n.11 (1986)).

The reason *Brnovich* specifically proscribed stand-alone disparate impact claims is because "differences in employment, wealth, and education may make it virtually impossible for a State to devise rules that do not have some disparate impact" and emphasized that Section 2(b) of the VRA is not a stand-alone disparate impact test. *See Brnovich*, 594 U.S. at 677. Likewise, Appellants' promotions of this novel Section 2 theory based on *Brnovich* would subject nearly every new legislative

21

map to a similar disparate impact analysis.

Under *Brnovich*, the Supreme Court identified five factors to review a time, place, and manner restriction: (1) the size of the burden imposed by a challenged voting rule; (2) the degree to which a voting rule departs from standard practices at the time Section 2 was amended; (3) the size of any disparities in impact on members of different racial groups; (4) the opportunities provided by a State's voting system; and (5) the strength of the State's interest in the challenged voting rule. *See Brnovich*, 594 U.S. 669.

The Supreme Court held, "the mere fact that there is some disparity in impact does not necessarily mean that a system is not equally open or that it does not give everyone an equal opportunity to vote." *Brnovich*, 594 U.S. 671. The district court found Appellants' claims do not satisfy these *Brnovich* elements. ROA.665.

First, as the district court found, the Appellants have not shown a burden on the right to vote imposed by Tarrant County's redistricting. ROA.652. Appellants will enjoy future participation as they have in past elections. ROA.661. *See Keisling*, 959 F.2d at 145 (emphasizing that parties will have the opportunity to vote in the next elections scheduled

in their districts). Similarly, Appellants have the same access to vote as every other member of Tarrant County's electorate. ROA.665; s*ee also Donatelli v. Mitchell*, 2 F.3d 508, 514 (3d Cir. 1993) (a two-year delay in voting does not preclude plaintiffs from voting in any regularly scheduled election, for which they will have equal access).

Second, the district court held that Appellants have not alleged that Tarrant County's redistricting departs from standard practices when Section 2 was amended in 1982. ROA.663. Tarrant County is not required to conduct its redistricting only after the national census. As the district court noted, "'[s]tate officials in several other states, including California, Florida, New York, and Missouri, are reportedly considering the possibility of redrawing their congressional district boundaries before the 2030 census.'" ROA.663. In Tarrant County's case, redistricting is further justified because the Benchmark Map has been in place since 2010 and was affirmatively not modified after the 2020 census. *See Am. Citizens v. Perry*, 548 U.S. 399, 423 (2006). Tarrant County's procedures do not implicate the second *Brnovich* factor. ROA.652.

Third, as to the Plaintiffs' allegations of an incidental disparate

impact in the staggered election, this assertion does not account for geographic population groupings, actual size of each population, or the correlation between race and partisanship. The district court correctly identified this lack of context and correctly asserted that Appellants had not provided a metric through which the court could analyze the size or impact of any disparity. *See* ROA.664. As no court has utilized this novel theory, the district court correctly was unwilling to graft the very thing that the Supreme Court in *Brnovich* blocked from driving a Section 2 challenge – disparate impacts.

Fourth, the district court found Appellants have not shown an inability to participate in the "entire system of voting" which would constitute disenfranchisement. ROA.664. Appellants only claimed Map 7 deprived them of their non-existent right to vote in a commissioner's election in 2026. This is not disenfranchisement. Appellants still have equal access to participate in every election for which they are eligible in both 2026 and 2028.  ROA.664.

Fifth, the district court recognized that "redistricting is an inherently governmental prerogative." ROA.665. This holding followed this court's decision in *Petteway v. Galveston County*, 111 F. 4th 596

(5th Cir. 2024), that Tarrant County has a very strong interest in its ability to conduct its own redistricting. ROA.665. The ability to draw electoral districts is an authority vested in state legislatures. ROA.665; *Alexander v. S.C. State Conference of the NAACP*, 602 U.S. 1, 7 (2024).[7] Intrusions into this power to govern a state's own affairs should be rare and based on compelling and weighty satisfaction of evidentiary burdens, especially at the preliminary injunction stage.

The district court reviewed all five *Brnovich* factors and correctly decided Appellants have not demonstrated a claim meriting relief.

### Count 2 Part Two – The District Court Correctly Held Appellants' First Amendment Claim is a Political Question.

The district court correctly held there is no legal authority to reframe an adverse political outcome as "viewpoint discrimination." ROA.667. *See Rucho v. Common Cause*, 588 U.S. 684, 714 (2019). Appellants' argument has already failed under *Rucho*. The Appellants asserted a First Amendment claim that "partisanship in districting

---

[7] The district court was aware of Tarrant County's dilemma of whether to keep a racially motivated map. ROA.665. "That is, in 2021, 'the Commissioners Court was advised to keep a coalition district for the purpose of allowing Precinct 2 to maintain a minority-influenced district. … If race is what motivated the old map, this provides additional justification for Defendant's mid-decade redistricting." *Id.*

should be regarded as simple discrimination against supporters of the opposing party on the basis of political viewpoint." *Rucho*, 588 U.S. at 714. While Appellants admit that partisan redistricting claims are non-justiciable, they attempt to recast Tarrant County's partisan redistricting as "targeting politically disfavored voters with actual disenfranchisement" with Democrats being the "politically disfavored voters." *See* ECF No. 55, at 44. Appellants ask this Court to ignore *Rucho*.

The First Amendment does not protect Appellants from the consequences of redistricting based on lawful, political considerations. *Rucho*, 588 U.S. at 714-15.

Therefore, the district court correctly dismissed Appellants' First Amendment Claim.

### Counts 3 and 4—The District Court Correctly Held Appellants' Fourteenth and Fifteenth Amendment Claims Lack Evidentiary Support.

The district court found that Appellants' racial intent claims under the Fourteenth and Fifteenth Amendments are hollow. ROA.670. Plaintiffs assert that Map 7 "reduc[ed] from two to one the number of precincts in which minority voters can elect their candidate of choice"

and that Appellants' vote is diluted by virtue of not voting in the 2026 commissioner's election. ROA.669.

The district court correctly held that success under either amendment requires Appellants to establish that Tarrant County acted with a discriminatory purpose. ROA.670. (citing *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 481 (1997) ("whenever a challenger claims that a state law was enacted with discriminatory intent, the burden of proof lies with the challenger, not the state.")). This requires that Appellants demonstrate more than an awareness of a discriminatory effect resulting from Map 7; "it requires an affirmative intent to dilute the minority vote." ROA.670 (citing *LULAC v. Abbott*, 601 F. Supp. 3d 147, 160 (2022)). Utilizing that standard, the district court correctly held that Appellants had failed to provide evidence supporting an allegation that Tarrant County's redistricting was motivated by racial intent. ROA.670.[8]

---

[8] This lack of evidence is especially fatal because legislators possess the presumption of good faith. *Alexander*, 602 U.S. at 11. "This presumption of legislative good faith directs district courts to draw the inference that cuts in the legislator's favor when confronted with evidence that could plausibly support multiple conclusions." *Alexander*, 602 U.S. at 10; *Miller*, 515 U.S. at 903 ("until a claimant makes a showing sufficient to support that allegation the good faith of the state legislature must be

Appellants lack any direct or circumstantial evidence of racial intent to satisfy the likelihood of success prong. Without a racial motive for Tarrant County's redistricting, no Constitutional violation can exist under the Fourteenth and Fifteenth Amendments. Any preliminary injunction requires proof that Map 7 "'has the purpose and effect' of diluting the minority vote." *Alexander*, 602 U.S. at 39 (quoting *Shaw v. Reno*, 509 U.S. 630, 649 (1993)); *see also Abbott*, 601 F. Supp. 3d at 160 (defining purpose as requiring an affirmative intent to dilute the minority vote, not just an awareness of a discriminatory effect).

The Supreme Court, in *Arlington Heights*, ruled that courts may infer may find a discriminatory purpose based on circumstantial evidence by examining : (1)if the impact bears more heavily on one race than another; (2) historical background, (3) the sequence of events leading up to a challenged decision; (4) departures from normal procedure; and (5) legislative history. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977); *Perez v. Abbott*, 253 F. Supp. 3d 864, 956 (W.D. Tex. 2017) ("[c]onsideration of the *Arlington Heights* factors, when viewed in totality with the entire record

_____

presumed.").

evidence, may support a finding of intentional racial discrimination, even where the individual factors considered alone are not compelling.").

The district court examined the Appellants' proffered evidence under these factors and correctly held Plaintiffs have not demonstrated these factors were met. ROA.669-673.

First, the district court found that Map 7 was not drawn with any intention to bear more heavily on one race than another. Under Map 7, the election schedule has no impact on 89.2% of the Latino voting population and 83% of the Black voting population failed to prove a claim that Black and Latino voters are disparately impacted. *See* ROA.671. A redistricting plan that leaves a substantial majority of voters in every major racial group unimpacted does not provide circumstantial evidence of discriminatory intent. *See Abbott*, 601 F. Supp. 3d at 160 ("a court may *sometimes* infer discriminatory intent where an act has predictable discriminatory consequences.") (emphasis added).

Appellants ignore the high correlation between Latino and Black voters' partisan preferences. As the district court noted, "almost every reallocation of voting power at the hands of either party will tend to bear more heavily on some races and less on others." ROA.671 (quoting

*Abbott*, 601 F. Supp. 3d at 169). Appellants merely claiming a slight deviation in impact, even if supported by out of context statements and racially charged inuendo, is insufficient to show intentional racial dilution.

Second, the district court found Appellants did not provide evidence supporting a history of discriminatory intent in Tarrant County. The district court correctly concluded that Appellants cannot hold Tarrant County responsible for an unrelated decision made by the State legislature to show the County Commissioners' motives. *See* ROA.672. Taking statements by former commissioners out of context or intentionally warping their meaning is insufficient to create a history of discriminatory intent. ROA.671-72.

Third, Appellants failed to allege a sequence of events constituting circumstantial evidence of intentional discrimination. ROA.672. The district court was correct that adopting a different timeline and choosing different counsel is not circumstantial evidence of racial intent. ROA.672. Nor does Tarrant County's departure from the 2011 and 2021 redistricting process does not constitute circumstantial evidence of any racial intent. ROA.672. Appellants made no effort to justify how the

process surrounding Map 7's adoption was inadequate, they merely list differences that do not speak to a racial intent.

Finally, the district court observed Appellants have failed to allege a legislative history with the adoption of Map 7 that constitutes evidence of racial intent. ROA.673. Appellants repeatedly mischaracterized Judge O'Hare's response to a racially charged question, in which he appealed to voters of all races. As the district court correctly stated, Appellants cannot ascribe a racial motive to Judge O'Hare's comment when it evidenced an explicitly partisan motive. To the extent the comment touched on race, the district court noted it tracked precisely with the Appellants' assumptions about cohesive voting patterns of minority voters. ROA.673.

Therefore, under the *Arlington Heights* framework, the district court correctly denied Appellants' motion for preliminary injunction due their failure to demonstrate a likelihood of success on the merits and a "dearth" of any circumstantial evidence of racial intent. ROA.673.

## II.    The District Court Lacks Subject-Matter Jurisdiction Over Partisan Gerrymandering.

Tarrant County's redistricting was drawn with the explicit and successful aim of replacing one Democrat Commissioner with a

Republican. Appellants' claims are entirely dependent on entangling race and partisan motives and claiming that any notice of the correlation between race and politics is evidence of racial intent. This failure is lethal; "if it so happens that most loyal Democrats happen to be black Democrats and even if the State were *conscious* of that fact[,]" the redistricting is constitutionally permissible partisan motivated gerrymandering. *Hunt*, 526 U.S. at 551 (emphasis in original). The Supreme Court has already ruled that enabling courts to rule on partisan redistricting challenges would mean courts would "make their own political judgment about how much representation political parties deserve—based on the votes of their supporters—and to rearrange the [legislatively drawn] challenged districts to achieve that end." *See Rucho*, 588 U.S. at 705. Any claim "that a map is unconstitutional because it was drawn to achieve a partisan end [is nonjusticiable] in federal court." *Alexander*, 602 U.S. at 1. Because courts lack clearly, judiciable manageable standards, ruling on partisan gerrymandering "risk assuming political, not legal responsibility for a process that often produces ill will and distrust." *Vieth v. Juberlirer*, 541 U.S. 267, 307 (2004).

Appellants bear the burden of disentangling race and politics to prove "that the former drove a district's lines[,]" which requires Appellants to rule out any "competing explanation that political considerations dominated the legislature's redistricting efforts. If either politics or race could explain a district's contours, the plaintiff has not cleared its bar." *Alexander*, 602 U.S. 9-10. Appellants failed to meet this burden. None of Appellants' claims are justiciable.

## CONCLUSION

This Court *en banc* in *Petteway* strongly rejected maintaining meritless claims when it wrote: "[t]he court will not remain in the forefront of authorizing litigation, not compelled by law or the Supreme Court, whose principal effects are to (a) supplant legislative redistricting by elected representatives with judicial fiat, (b) encourage divisively counting citizens by race and ethnicity, and (c) displace the fundamental principle of democratic rule by the majority with balkanized interests." *Petteway*, 111 F.4th at 612. Appellants ask this Court to ignore all three principals.

The Court should affirm the district court's order and provide Tarrant County with all such further relief, general or special, at law or

in equity to which they may be entitled. Without a cause of action, there

is no injury. Without an injury, there is no cause of action.

Respectfully submitted,

/s/ Joseph M. Nixon
J. Christian Adams
Kaylan Phillips
Joseph M. Nixon
Jewel M. Lightfoot*
PUBLIC INTEREST LEGAL
FOUNDATION
107 S. West Street
Alexandria, VA 22413
Tel: (703) 745-5870
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org
jnixon@publicinterestlegal.org
jlightfoot@publicinterestlegal.org
*Motion for Admission pending

Stephen A. Lund
State Bar No. 24086920
Tarrant County District
Attorney's Office
401 W. Belknap St., 9th Floor
Fort Worth, TX 76196
Tel: (817) 884-1400
Fax: (817) 884-1475
SALund@tarrantcountytx.gov

Katherine E. Owens
State Bar No. 24081683
Tarrant County District
Attorney's Office
401 W. Belknap St., 9th Floor

Fort Worth, TX 76196
Tel: (817) 884-1400
Fax: (817) 884-1475
KEOwens@tarrantcountytx.gov

COUNSEL FOR DEFENDANTS-
APPELLEES

### CERTIFICATE OF SERVICE

I certify that on October 21, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all counsel of record.

/s/ Joseph M. Nixon
Joseph M. Nixon
COUNSEL FOR DEFENDANTS-APPELLEES

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 6,284 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in Century font 14-point type face.

/s/ Joseph M. Nixon
Joseph M. Nixon
COUNSEL FOR DEFENDANTS-APPELLEES

Dated: October 21, 2025